UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH | ) | |
| OF INFORMATION ASSOCIATED WITH | ) | |
| TALENTSCOUT2IDEALGLAMOUR@ | ) | Misc. No. _____ |
| GOOGLEMAIL.COM, | ) | |
| LOOKWHATIHAVE666@GMAIL.COM, | ) | **Filed Under Seal** |
| SCOUTFORSTORM@GOOGLEMAIL.COM, | ) | |
| DELETION.CONFIRMATIONS@ | ) | |
| GMAIL.COM, AND | ) | |
| REMOVAL.CONFIRMATIONS@GMAIL.COM, | ) | |
| THAT IS CONTROLLED BY | ) | |
| GOOGLE | ) | |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Joseph Jung, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for records

and other information associated with the e-mail accounts

**talentscout2idealglamour@googlemail.com, lookwhatihave666@gmail.com,**

**scoutforstorm@googlemail.com, deletion.confirmations@gmail.com, and**

**removal.confirmations@gmail.com** (the "Subject Accounts"), which is stored at premises

controlled by Google, Inc., a company that provides electronic mail (e-mail) and other internet

services.  Google's headquarters is located at 1600 Amphitheater Parkway, in Mountain View,

CA.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§

2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government

copies of the information (including the content of communications) further described in

Attachment B.  The government is seeking any e-mails and other information associated with

the Subject Accounts, as described in Attachment B, that are in the custody of Google, Inc., from September 2009 to the date of the execution of the warrant.

2.      I am a Special Agent with the United States Department of State's Diplomatic Security Service ("DSS") and have been so employed since 2001.  I received formal training at the Federal Law Enforcement Training Center in Glynco, Georgia and the Diplomatic Security Service Training Center in Dunn Loring, Virginia.  I am currently assigned to the Diplomatic Security Office of Special Investigations.  My current assignment includes investigating administrative and criminal misconduct by employees of the Department of State, including investigating violations of 18 U.S.C. 371, 1028, 1028A, 1029, 1030, 1341, 1343, 1542, 1543, 1546, 1946, and 2261A.  Based on my training and experience, I am familiar with the means by which individuals use computers and information networks to commit various crimes.

3.      In or about April 2015, as set forth herein, DSS began investigating a target, believed to be Michael C. Ford, for engaging in a computer hacking, cyber stalking, and extortion campaign designed to force numerous females around the United States, including 18-year-old Jane Doe One, to provide him with sexually explicit photographs and videos of themselves and/or other females.  Ford, a U.S. national and a U.S. State Department employee, lives in London, England, where he works for the U.S. Embassy.  He has used a variety of techniques to force the females he targets to cede to his "sextortionate" demands.  For example, he has repeatedly accessed, without authorization ("hacked" into), the women's online accounts, in search of private photographs of a sexual nature and other personally identifiable information ("PII"); he has obtained private photographs of a sexual nature and other sensitive PII from the hacked accounts; and he has sent the victims online communications, warning them that he has copies of the compromising photographs and threatening to distribute the photographs, along

with other sensitive information about the victims, to others.   With this backdrop, the target has then repeatedly sent threatening electronic communications to the women, telling them that, unless they gave him sexually explicit photographs or videos of themselves and/or of other females, he would continue with the above-described conduct.  When the women have refused to comply with the target's demands and begged him to leave them alone, he has responded with additional threats.

4.      I am submitting this affidavit in support of an application for a warrant to search records and other information (including the contents of communications) associated with the e-mail accounts **talentscout2idealglamour@googlemail.com, lookwhatihave666@gmail.com, scoutforstorm@googlemail.com, deletion.confirmations@gmail.com, removal.confirmations@gmail.com**, which is further described in the following paragraphs and in Attachment B.  These records, and other information are stored at premises owned, maintained, controlled or operated by Google.   There is probable cause to believe that records and other information associated with these accounts contain evidence, fruits, and instrumentalities of various violations of Title 18, United States Code, as detailed and specified herein.

5.      This affidavit is made in support of an application for a search warrant pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to compel Google, a provider of electronic communication and remote computing services, to provide certain items as set forth in Attachment B, Part II, hereto, and for the government to search and to seize certain items as set forth in Attachment B, Part III, hereto.

6.      The facts set forth in this affidavit are based upon my personal observations, my review of documents and computer records, my training and experience, and information

obtained from other agents and witnesses.  This affidavit is intended to show merely that there is

sufficient probable cause for the requested warrant and does not purport to set forth all of my

knowledge of or investigation into this matter.

JURISDICTION

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) and

(c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction

over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  If this investigation leads to the

eventual indictment of the subject, the government anticipates effectuating an arrest at the U.S.

State Department headquarters in Washington, D.C. *See* 18 U.S.C. § 3238.

PROBABLE CAUSE

8.      On or about April 16, 2015, DSS agents received a request for assistance from

Federal Bureau of Investigation ("FBI") Special Agent David McClelland from the Louisville,

Kentucky, FBI field office.  SA McClelland stated that he was assisting local law enforcement

agents from the Henderson Police Department in Henderson, Kentucky, in their investigation

into an unknown target who, in or about January 2015, apparently hacked into various online

accounts belonging to Jane Doe One, an 18-year-old Kentucky resident (whose identity is known

to the affiant but is being withheld from this affidavit to protect her identity).  The target

obtained, apparently from Jane Doe One's hacked accounts, private photographs of Jane Doe

One of a sexual nature.  He then sent Jane Doe One several threatening e-mail messages to her

Google e-mail account.  I have reviewed copies of the e-mail messages that Jane Doe One

received from the target and provided to Kentucky law enforcement agents.  In those messages,

the target admitted that he had obtained sexual photographs of Jane Doe One and sent her sample

4

photographs as proof.  He then demanded that Jane Doe One take videos of other "girls" and "sexy girls" who were undressing in changing rooms at pools, gyms, and clothing stores, and then give the videos to him.   The target threatened Jane Doe One that, if she did not send him the requested naked videos of other "girls," he would post the private photographs of Jane Doe One widely online, along with Jane Doe One's actual name and address, which he listed in the e-mail message.  He also threatened to e-mail the private photographs to several of Jane Doe One's acquaintances, which he listed by first name and last name and, in one case, included a phone number.

9.     For example, in an e-mail dated January 26, 2015, the target, using the Google e-mail account "David Anderson" **"talentscout2idealglamour@googlemail.com,"** sent a series of e-mail messages to Jane Doe One.  The first stated:  *"finally, I found you!  What do you think?  Nice ass!"*  Attached to that e-mail message was a file called "unnamed.jpg," which, according to Jane Doe One, was a photograph of her of a sexual nature.  When Jane Doe One asked where he got the photo, the target responded, *"I'm a wizard, I have lots.  Did you like it? :)."*   He then asked *"can I text the picture to [and inserted a phone number of an acquaintance of Jane Doe One] or maybe email it to [list of first name and last name of several of Jane Doe One's friends]."*

10.     Then the target threatened to post Jane Doe One's name and address, along with the photographs, and listed her current address in the e-mail.

11.     Jane Doe One had no knowledge as to the target's identity, how he obtained the photographs, or how he knew her name and address, as well as her friends' first names and last names and phone numbers.  She believed that he did so by hacking into her online accounts.

12.     When Jane Doe One responded that she was going to go to the police and remarked that the target had hacked her accounts, the target responded, *"I've hacked nothing. You threaten me again and I send it out.  Would you like that."*

13.     When Jane Doe One again refused and begged the target to leave her alone, the target responded, *"I want you to video girls in the changing room [of her gym].  If you don't, I send your details and pictures to everyone.  What do you say?  Looks like you've made up your mind.  Get ready for my email and post to go out tomorrow morning.  Enjoy!"*

14.     A few days later, on or about January 28, 2015, the target, using the same e-mail account, wrote:  *"I want you to record videos of sexy girls changing.  In gyms, clothing stores, pools . . . . You do that, and I disappear."*

15.     Jane Doe One continued to plead with the target to leave her alone.

16.     The target responded, *"OK, time's up.  Everything I have will be posted online and sent to your friends.  Pictures, name, phone number, home address...I gave you a chance and you blew it!"*

17.     On or about April 2, 2015, the Henderson Police Department received subscriber records responsive to a Kentucky state grand jury subpoena, issued to Google on or about February 23, 2015 for the Google account associated with **"talentscout2idealglamour@googlemail.com."**  According to those records, the account subscriber's name was listed as "david anderson."  The account was created on September 21, 2009.  The accountholder also used other Google services:  Gmail, Google Calendar, Google Docs, Google Chrome Sync, Google Drive, Google+, Google Talk, YouTube, orkut, and iGoogle.

18.     The Google records also revealed the Internet Protocol ("IP") address that the accountholder used to create the account in 2009.  An IP address is a series of numbers that identifies a particular computer connected to the internet.  That IP address is 169.252.4.21. Using an open-source tool called "Domain Tools," and performing a "who is" look up, agents determined that the IP address resolves to the U.S. Department of State, which indicates that it is likely a Department of State employee who is the accountholder.   Likewise, the records from Google revealed a month's worth of IP addresses that logged into the account in January and February 2015, when Jane Doe One received the e-mails described above.   Those IP addresses, including 169.253.194.1, also resolve to the U.S. Department of State.

19.     On or about April 30, 2015, DSS Special Agent Eric Kasik sent a follow-up preservation request letter to Google to preserve records associated with this account.

20.     In an attempt to identify which particular U.S. State Department computer was assigned to the IP address that repeatedly logged into the **"talentscout2idealglamour@googlemail.com"** account while the e-mails above were being sent, I have spoken with DSS computer specialists, as well as State Department security personnel and Information Technology personnel in the U.S. Embassy in London.  Those individuals have informed me that the suspect IP address resolves to a single computer that is located at a workstation cubicle located in the U.S. Embassy in London.

21.     Personnel from the U.S. Embassy in London notified me that the only person who sits at that workstation cubicle and uses that computer is Michael C. Ford.  They informed me that the computer is owned by the U.S. State Department.  Ford is a U.S. citizen from Atlanta, Georgia, who has worked as a State Department employee at the U.S. Embassy in London since

2009.  They informed me that Ford currently sits at that cubicle and has sat there since before

January 2015 (when the computer was used to send e-mail messages to Jane Doe One).

22.     Personnel from the U.S. Embassy in London have provided me with a copy of the

banner that appears on the target's computer screen each time he logs into his computer.  I have

reviewed the text of the banner and confirmed that it provides the user's consent to allow the

government to, at any time, and for any lawful government purpose, monitor, intercept, and

search and seize any communications or data transiting or stored on the "information system,"

which includes the computer, the network, all computers connected to the network, and all

devices and storage media attached to the network or computer.  It also states that the user agrees

that he has no reasonable expectation of privacy in any communications or data transiting or

stored on the information system.

23.     Beginning on or about April 27, 2015, DSS agents have continuously, remotely,

and surreptitiously monitored and recorded the communications or data transiting or stored on

the "information system," that is located at Ford's work station in his cubicle at the U.S.

Embassy.

24.     DSS computer specialists have obtained, and provided me with copies of screen

shots that they have taken of Ford's computer screen, and showed me video files they have taken

recording Ford's computer use.   Based on my review of some of these records, and my

conversations with DSS computer specialists who have monitored the target's computer use, I

believe that the target engages in the following activities from his work computer:  he first

identifies potential victims' e-mail accounts, with a particular interest in females who have e-

mail accounts with universities or who possibly work for modeling agencies.  He then tries to

trick the women into giving him the password to their e-mail account by sending fraudulent

"phishing"-type e-mail messages to the victims.  In some of those "phishing" e-mails, the target

pretends to be a customer service representative from Google, using

**"deletion.confirmations@gmail.com" and "removal.confirmations@gmail.com"** to send the

"phishing" e-mails.  He notifies the victims that there is a problem with their Google e-mail

account and warns them that their account will be closed unless they provide him with their

passwords.  Once he is able to trick the account holders into giving him the passwords to their e-

mail accounts, the target uses the passwords to hack into the victims' e-mail accounts.  When

he's inside the account, he searches for the victim's private photographs and other personal

information, such as the victim's name, address, and similar information about the victim's

friends.  He tries to identify additional online accounts that the victim may use that are popular

for storing photographs (for example Picasa, Instagram, Facebook, or an iCloud storage

account).  The target also looks for additional passwords or other ways to get into these other

online accounts.   He then tries to hack into the victims' other online accounts, in search of

additional photographs of a sexual nature.  When he successfully obtains such a photograph, the

target saves it to his desktop and then e-mails it to himself at an e-mail address

**"scoutforstorm@googlemail.com."**  Once the target has obtained the desired photographs and

PII, he e-mails his victims using the e-mail address **"lookwhatihave666@gmail.com,"** shows

them that he has the photographs, and threatens to release them and post their PII unless they

provide photographs or videos of a sexual nature of themselves or other females.

25.    As further support, DSS computer specialists provided me with a copy of a

document that the target accessed on his computer screen during a recent computer session that

DSS computer specialists monitored.  The document is a spreadsheet that appears to summarize

the target's hacking and sextortion activities.  The spreadsheet, along the left hand column, lists

account names for approximately 250 e-mail addresses.  Many of the e-mail address account

names appear to be females.  Many are identified by domain names that end in .edu, (e.g.,

JaneDoe2@rmu.edu, JaneDoe3@mail.bradley.edu, JaneDoe4@bsu.edu, JaneDoe

5@umich.edu).

26.      In the next column to the right, next to each e-mail address, appears to be the

password for each e-mail account.  In other columns to the right, there are headers that read:

"work," "cons," "icloud," "pics," "facebook," "picasa," "instagram," and "twitter."  Under each

of those column headers, associated with each e-mail account listed, is a "y" for yes or "n" for

no.  Some have the phrase "y crap" instead of "y."   I recognize "icloud" as a popular online (or

"cloud") storage service that Apple operates.  Users who have iPhones or other Apple devices

can synch their photographs and contacts and other content on their devices and store them in

their iCloud account.  I recognize Facebook as a popular online social networking service

provider, where users often post and store photographs.  I recognize "Picasa" and "Instagram"

as popular online photograph sharing service providers.   Users set up accounts with these

various providers and password-protect access to their accounts.

27.      Based on my review of the spreadsheet and other information gathered in this

investigation, I believe that the account holders listed on the spreadsheet are victims of the

target's criminal activity.   I believe that the target has successfully used the passwords listed in

the spreadsheet, as well as other information, to hack into the victims' e-mail accounts.  This is

because, under the header "work," virtually every e-mail account listed on the left hand column

has a corresponding entry under the "work" column that reads "y," presumably shorthand for

"yes."  I believe this means that the target has tested the password and determined that it "works"

to let him hack into the victim's e-mail account.

28.     I also believe that, once the target has hacked into the victim's e-mail account, the target then tries to hack into the victim's other online accounts, where he searches for sexually explicit photographs and PII belonging to the victim.

29.     At the very top of the spreadsheet, before the list of e-mail addresses begins, are two e-mail addresses:  **"deletion.confirmations@gmail.com" "lookwhatihave666"** (with no extension).

30.     Given the placement of these e-mail account names, namely, listed at the top of a spreadsheet, underneath which where the document appears to be a list of his victims, I believe that they belong to the target and that he uses them in connection with his criminal activity. Furthermore, as noted above, the DSS computer specialists who have been monitoring the target's computer use told me that the target sends photographs taken from the victims' accounts to an e-mail account, **"scoutforstorm@googlemail.com."**

31.     DSS computer specialists who have been monitoring the target's computer use informed me that that the target regularly accesses three other e-mail accounts: **"scoutforstorm@googlemail.com," "deletion.confirmations@gmail.com,"** and **"removal.confirmations@gmail.com**." I believe that the target uses these accounts in connection with his criminal activity.  I recognize the e-mail address **"deletion.confirmations@gmail.com"** from the spreadsheet described above.  The **"scoutforstorm"** account naming convention is similar to the account name **"talentscout2idealglamour,"** which, as described above, the target used to communicate with Jane Doe One.   I believe that by using names like "scouts" and "talent scouts," the target may be pretending to be some type of talent or model scout, as a pretext for trying to convince his victims to give him revealing photographs of themselves.  Furthermore, the account names

11

**"deletion.confirmations@gmail.com,"** and **"removal.confirmations@gmail.com"** are consistent with the target's "phishing" activity, where he sends e-mails posing as a Google customer service representative, warning the accountholder that her account will be "deleted" or "removed," and asking for the password to the account.

32.     I have obtained other information that confirms that the e-mail accounts described above are likely linked to the target's criminal activity.  Personnel at the U.S. Embassy in London have provided me with selected documents obtained from Michael Ford's employment file.  Those records indicate that Ford began working at the Embassy in 2009.  This start date is consistent with the Google records that show that the **"talentscout2idealglamour"** Google account was created in September 2009 by a computer that I have been able to trace to the U.S. State Department.

33.     Those personnel records also indicate Ford's social security number and date of birth.  Using that information, I have had a DSS analyst perform a criminal records check on those identifiers.  Those criminal records reveal that a Michael C. Ford, with the same social security number and date of birth, has one criminal arrest (but no convictions) for "peeping tom"-like offenses.

34.     On or about April 30, 2015, DSS Special Agent Eric Kasik sent a preservation request letter to Google to preserve records associated with the accounts **lookwhatihave666@gmail.com, scoutforstorm@googlemail.com, deletion.confirmations@gmail.com,** and **removal.confirmations@gmail.com.**

<u>RELEVANT FEDERAL OFFENSES</u>

35.     Based upon the information above, I submit that there is probable cause to believe that the target has committed one or more criminal violations, including 18 U.S.C. § 875

(Interstate Threats); 18 U.S.C. § 1030 (Fraud in Connection with Computers); 18 U.S.C. § 1343

(Wire Fraud), and 18 U.S.C. § 2261A (Cyberstalking).  I further submit that there is probable

cause to believe that, on the computer systems leased, maintained, and operated by Google, as

described above, there exists evidence, fruits, and instrumentalities of violations of these statutes

and that therefore agents should be allowed to search and to seize records and other information

(including content of communications) stored on servers being maintained by Google for the

account and files associated with the e-mail accounts

**talentscout2idealglamour@googlemail.com, lookwhatihave666@gmail.com,**

**scoutforstorm@googlemail.com, deletion.confirmations@gmail.com**, and

**removal.confirmations@gmail.com**.

TECHNICAL BACKGROUND

36.      E-mail and web hosting companies, such as Google, provide e-mail, webhosting,

and other services to the public.  Google maintains computers that are connected to the Internet,

and their subscriber/customers use those computers to, among other things, send and receive e-

mail and operate websites that are available to others browsing the World Wide Web.

37.      E-mail providers' customers place files, software code, databases, and other data

on the servers.  To do this, customers connect from their own computers to the server computers

across the Internet.  This connection can occur in several ways.  In some situations, it is possible

for a customer to upload files using a special web site interface offered by the web hosting

company.  It is frequently also possible for the customer to directly access the server computer

through the Secure Shell ("SSH") or Telnet protocols.  These protocols allow remote users to

type commands to the web server.  The SSH protocol can also be used to copy files to the server.

Customers can also upload files through a different protocol, known as File Transfer Protocol

("FTP").  Servers often maintain logs of SSH, Telnet, and FTP connections, showing the dates

and times of the connections, the method of connecting, and the Internet Protocol addresses ("IP

addresses") of the remote users' computers (IP addresses are used to identify computers

connected to the Internet).   Servers also commonly log the port number associated with the

connection.  Port numbers assist computers in determining how to interpret incoming and

outgoing data.  For example, SSH, Telnet, and FTP are generally assigned to different ports.

38.     The servers use those files, software code, databases, and other data to respond to

requests from Internet users for pages or other resources from the website.  Commonly used

terms to describe types of files sent by a server include HyperText Markup Language ("HTML")

(a markup language for web content), Cascading Style Sheets ("CSS") (a language for styling

web content), JavaScript (a programming language for code run on the client's browser), and

image files.  Web hosting companies frequently allow their customers to store collections of data

in databases.  Software running on the web server maintains those databases; two common such

programs are named MySQL and PostgreSQL, although these are not the only ones.

39.     Web sites deliver their content to users through the Hypertext Transfer Protocol

("HTTP").  Every request for a page, image file, or other resource is made through an HTTP

request between the client and the server.  The server sometimes keeps a log of all of these

HTTP requests that shows the client's IP address, the file or resource requested, the date and

time of the request, and other related information, such as the type of Web browser the client

uses.

40.     In some cases, a subscriber or user will communicate directly with an e-mail

provider about issues relating to an e-mail account, such as technical problems, billing inquiries,

or complaints from other users.  E-mail providers typically retain records about such

communications, including records of contacts between the user and the company's support services, as well records of any actions taken by the company or user as a result of the communications.

LEGAL AUTHORITY

41.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications) described in Attachment B, Part II hereto ("Accounts and Files to Be Copied by Google Personnel") and particularly described in Attachment B, Part III ("Records and Data to Be Searched and Seized by Law Enforcement Personnel").  Upon receipt of the information described in Part II of Attachment B, government-authorized persons will review that information to locate the items described in Part III of Attachment B ("Records and Data to Be Searched and Seized by Law Enforcement Personnel").

42.     The government may obtain Internet content and subscriber information from a third party by obtaining a search warrant. 18 U.S.C. §§ 2703(a), 2703(c)(1)(A).  Any court with jurisdiction over the offense under investigation may issue a § 2703 warrant, regardless of the location of the server where information will be searched. 18 U.S.C. § 2703(b)(1)(A). Furthermore, unlike other search warrants, a § 2703 warrant does not require an officer to be present for service or execution of the search warrant. 18 U.S.C. § 2703(g).

43.     If the government obtains a search warrant, there is no requirement that the third party, Google, give notice to the subscriber.  18 U.S.C. §§ 2703(b)(1)(A), (c)(3).

<u>REQUEST FOR SEALING AND PRECLUSION OF NOTICE</u>

44.     This is an ongoing investigation of which the target is unaware.  It is very likely, based upon the above, that evidence of the crimes under investigation exists on computers subject to the control of the target.  There is good cause to believe, based on the above, that premature disclosure of the existence of the warrant will result in the target's flight from prosecution, including to countries with which the United States does not have an extradition treaty, result in the destruction or tampering of evidence, subject potential witnesses to intimidation, or otherwise seriously jeopardize the success of the investigation.  Accordingly, it is requested that this Affidavit and all papers in support of this Application, including the Affidavit and the warrant, be sealed for a period of 180 days.  In addition, pursuant to 18 U.S.C. § 2705(b), it is requested that this Court order the electronic service provider to whom this warrant is directed not to notify anyone of the existence of this warrant, other than its personnel essential to compliance with the execution of this warrant until further order of the Court, on the basis that notification would result in the target's flight from prosecution, destruction or tampering of evidence, witness intimidation, or serious jeopardy to the success of the investigation.

<u>CONCLUSION</u>

45.     Based on my training and experience, and the facts as set forth in this affidavit, I submit that there is probable cause to believe that the target has sent interstate threats in violation of 18 U.S.C. § 875, and has committed computer fraud and abuse in violation of 18 U.S.C. § 1030, wire fraud in violation of 18 U.S.C. § 1343, and cyberstalking in violation of 18 U.S.C. § 2261A.   Based on my training and experience, and the facts as set forth in this affidavit, I also submit that there is probable cause to believe that computer systems operated by or in the control

of Google, an e-mail and webhosting company located in Mountain View, CA, contain evidence,

fruits, and instrumentalities of the crimes identified above.  Accordingly, a search warrant is

requested.   The procedures that will be used to copy and review the relevant records are also set

forth in Attachment B.

Respectfully submitted,

_____
SPECIAL AGENT JOSEPH JUNG
UNITED STATES DEPARTMENT OF
STATE DIPLOMATIC SECURITY SERVICE

Subscribed and sworn to
before me on _____, 2015.

_____
The Honorable Alan Kay
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**
**Property to be Searched**

This warrant applies to information associated with the following e-mail accounts:

**talentscout2idealglamour@googlemail.com**
**lookwhatihave666@gmail.com**
**scoutforstorm@googlemail.com**
**deletion.confirmations@gmail.com**
**removal.confirmations@gmail.com**

Information associated with these accounts is stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

**ATTACHMENT B**
**Property to be Seized**

## I.      Procedure

A.      The search warrant will be presented to Google personnel, who will identify the accounts and files to be searched, described in Section II, below.

B.      Google personnel will then create an exact electronic duplicate of these accounts and files ("the account duplicate").

C.      Google personnel will provide the account duplicate to law enforcement personnel.

D.      Google personnel will also provide copies of any other records and data identified in Section II below that are not contained in the account duplicate.

E.      Using technology and techniques reasonably available to them, law enforcement personnel will then search the account duplicate for the records and data to be seized, described in Section III, below.

F.      Upon review of e-mails and content, and upon classification as pertinent, non-pertinent, or privileged, only e-mails and content deemed pertinent to the matter under investigation will be utilized by law enforcement in the course of this investigation.  Law enforcement personnel will seal the non-pertinent and privileged materials, as well as the original duplicate of the account and files received from Google, and will not further review the original duplicate absent an order of the Court.

## II.     Accounts and Files to Be Copied

A.      All records, files, and other information (including data and the content of electronic communications or contained in "draft" or "trash" Gmail folders) for the Google Services of Account Activity, Drivesync Invite, Gauss, Gmail, Google App Engine Admin Console, Google Calendar, Google Docs, Google Drive, Google Maps Engine, Google Talk, Knowledge Search, Lso Provider, Omaha, Orkut, Web History, YouTube, and iGoogle associated with the Google accounts of:

        **talentscout2idealglamour@googlemail.com**
        **lookwhatihave666@gmail.com**
        **scoutforstorm@googlemail.com**
        **deletion.confirmations@gmail.com**
        **removal.confirmations@gmail.com**

B.      All transactional records associated with the accounts listed in II(A), including:

      1.      The following subscriber information:

            a.      Name(s) and e-mail address(es);

     b.       Address(es);

     c.       Records of session times and durations;

     d.       Length of service (including start date) and types of service utilized;

     e.       Telephone instrument number or other subscriber number or identity, including any temporary assigned network address;

     f.       The means and source of payment for such service (including any credit card or bank account number); and

     g.       The Internet Protocol address used by the subscriber to register the account or otherwise initiate service.

2. User connection logs for any connections to or from the e-mail accounts including:

     a.       Connection time and date;

     b.       Disconnect time and date;

     c.       The IP address that was used when the user connected to the service;

     d.       Source and destination of any electronic mail messages sent from or received by the account, and the date, time, and length of the message; and

     e.       Any address to which electronic mail was or is to be forwarded from the account or e-mail address.

## III.    Records and Data to be Searched and Seized by Law Enforcement Personnel

A. Evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 875 (interstate threats), 18 U.S.C. § 1030 (computer fraud and abuse), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 2261A (cyberstalking), between September 2009 and the date of this warrant, including information relating to:

1. Records and data (as defined in Attachment C) relating to the obtaining and use of victims' personal identifying information, including but limited to:  first name, last name, middle name, email address, email password, other account name (including iCloud, Twitter, Facebook, Picasa, and the like), other account passwords, address, phone number, and similar information about the victim's acquaintances.
2. Records and data relating to the targeting or identification of victims, including but not limited to, university students and models.
3. Records and data relating to the creation and use of pretextual e-mails or other communications purporting to be sent from Google or another service provider.

4.  Records and data relating to the creation and use of pretextual e-mails or other communications purporting to be sent from a talent scout, photographer, modeling agency representative, or similar person.

5.  Records and data relating to gaining, or attempting to gain, unauthorized access to protected computers, including online accounts for social media, photograph sharing, cloud storage, e-mail, and merchant accounts belonging to victims.

6.  Records and data relating to extortion, or attempts to extort, from victims the provision of sexually graphic or explicit photographic or video images.

7.  Records and data relating to any threats or attempts to harass or impair the reputation of victims or cause emotional distress to the victims.

8.  Records and data relating to any threats or attempts to damage protected computers, including social media, photograph sharing, e-mail, and merchant accounts belonging to victims.

9.  Records and data relating to any threats or attempts to disclose sexually graphic or explicit photographic or video images or other personally identifiable information of victims to others.

10.  Records and data relating to any use of techniques or services designed to hide the identity of the sender of the communication.

11.  Records and data relating to the use of false names and identities, including, but not limited to, David Anderson.

12.  Records and data relating to communications with other e-mail accounts or instant message accounts regarding any of the above.

13.  Records and data relating to who used, created, or communicated with the account(s) or identifier(s), including records about their identities and whereabouts.

14.  Records and data relating to the development, publishing, advertisement, access, use, administration or maintenance of the account associated with the subject e-mail account, including files, databases, and database records stored by Google, including:

    a.  programming code used to serve or process requests made via web browsers;
    b.  HTML, CSS, JavaScript, image files, or other files;
    c.  HTTP request and error logs;
    d.  SSH, FTP, or Telnet logs showing connections related to the website, and any other transactional information, including records of session times and durations, log files, dates and times of connecting, methods of connecting, and ports;
    e.  MySQL, PostgreSQL, or other databases related to the website;
    f.  Stored e-mails.

15.  If a domain name was registered on behalf of the subscriber, the date that the domain was registered, the domain name, the registrant information, administrative contact information, the technical contact information and billing contact used to register the domain and the method of payment tendered to secure and register the Internet domain name.

16. Subscriber information related to the accounts enumerated in Attachment A, to include:

     a.    Names, physical addresses, telephone numbers and other identifiers, email addresses, and business information;

     b.    Length of service (including start date), types of service utilized, means and source of payment for services (including any credit card or back account number), and billing and payment information;

B.    All of the transactional records described in Section II(B).

## ATTACHMENT C
**Definitions**

For the purpose of this Warrant:

1.      "Computer hardware" means: electronic devices capable of data processing (such as laptop and desktop computers, personal digital assistants ("PDAs"), and wireless communication devices); peripheral input/output devices (such as keyboards, printers, scanners, monitors, and drives intended for removable storage media); related communications devices (such as wired or wireless cards, modems, cables, and connections), and security devices, (such as electronic data security hardware and physical locks and keys).

2.      "Computer software" means: programs, program codes, information and data stored in any form (such as operating systems, applications, utilities, communications and data security software; log, history and backup files; encryption codes; user names; and passwords), whether deliberately, inadvertently, or automatically stored.

3.      "Computer-related documentation" means: any material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

4.      "Storage media" means: any media capable of collecting, storing, retrieving, or transmitting data (such as hard disks, floppy diskettes, CDs, DVDs, tapes and memory cards).

5.      "Data" means: all information stored on storage media of any form (such as documents, tables, metadata, audio and visual files, their drafts and their modifications, whether deliberately, inadvertently, or automatically stored).

6.      "A Record" is: any communication, representation, information or data.  A "record" may be comprised of letters, numbers, pictures, sounds or symbols.